Statement of Facts.

porting company, in one form or another, on its transportation.
Here the commonwealth does not tax the receipts of the com-
pany that carries the merchandise or passengers.   The trans-
portation is neither taxed nor restricted in any way.   Between
the companies, even, the amount paid by the one and received
by the other is not for transportation, simply or virtually, but
for trackage, or the use of the road ; and the amount fixed by
the agreement has to be paid, whether merchandise or passengers
are carried or not.

PER CURIAM:

These cases were argued together.   The opinion of the learned
judge below, in No. 7 of May Term, covers substantially all the
questions presented, and we affirm the judgment in each case
upon said opinion.

---

## LITITZ N. BANK v. SUSAN SIPLE.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF DAUPHIN COUNTY.

Argued June 1, 1891—Decided June 5, 1891.

(*a*) The maker of a matured note, held in bank, telegraphed to the payee
and indorser, " Can I draw for note due to-day ? "   Receiving the reply
" Yes," the maker drew for an amount larger than the amount of the note.
The bank took the draft, charged the note to the maker, and trans-
mitted the draft for collection :
1. The indorser was not bound to accept the draft for the amount for
which it was drawn ; nor was his telegram in reply to that of the maker
a waiver of notice of non-payment of the note.   In such case, the note
not having been paid, or protested for non-payment, the indorser was
discharged from liability thereon.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS,
McCOLLUM and MITCHELL, JJ.

No. 17 May Term 1891, Sup. Ct.; court below, No. 541
June Term 1889, C. P.

On May 15, 1889, the Lititz National Bank brought assump-

sit against "Susan Siple, doing business as W. H. Siple, Atty.," as the indorser of a negotiable note dated August 20, 1888, made by Jacob A. Buch & Brother to the order of W. H. Siple, Atty., for $805.25, at three months. Issue.

The cause having been tried on a submission to the court, without a jury, under the act of April 22, 1874, P. L. 109, the court, McPHERSON, J., on December 18, 1890, filed the following decision:

### FINDINGS OF FACT.

1. In and before the year 1888, the defendant was a lumber merchant in Hummelstown, and Jacob A. Buch & Brother were lumber merchants in Lititz, Pa. On August 20, 1888, the latter were indebted to the former in the sum of $805.25; and thereupon made and delivered to W. H. Siple, attorney in fact for defendant, a promissory note of which the following is a copy:

"$805.25.  LITITZ Pa., August 20, 1888.

"Three months after date we promise to pay to the order of W. H. Siple, Atty., eight hundred and five .25 dollars at the Lititz Nat'l Bank of Lititz, Pa. without defalcation, for value received.  JACOB A. BUCH & BRO."

"2. This note was indorsed by W. H. Siple, Attorney, was discounted for his benefit by the Lititz National Bank, the plaintiff in this suit, and was held by it on November 23d. In the morning of that day, upon which the note became due, the plaintiff's cashier had an interview with Jacob A. Buch in reference to its payment. Mr. Buch said that he had telegraphed, or would telegraph to Mr. Siple, for permission to draw on him to meet it, but the cashier did not see, or ask to see the telegram which was actually sent. The message was in these words: "LITITZ, Pa. November 23, 1888. W. H. SIPLE: Can I draw for note due to-day; will mail check; cannot get discount before Monday; answer quick. JACOB A. BUCH." To this, Mr. Siple answered as follows: "HUMMELSTOWN, 11, 23, 1888. J. A. BUCH & BRO., Lititz. Yes. W. H. SIPLE."

3. Mr. Buch left Lititz on business, before Mr. Siple's answer was received, but prepared and gave to his son a draft of which the following is a copy: "$840. LITITZ, Pa., Nov. 23,

Decision of Court below.

1888. At sight pay to the order of Jacob A. Buch, eight hundred and forty dollars, value received, and charge the same to account of JACOB A. BUCH. To W. H. SIPLE, Attorney, Hummelstown, Pa. [Indorsed] JACOB A. BUCH:" and instructed his son to take the draft with Mr. Siple's answer to the bank. This was accordingly done in the afternoon, and the bank thereupon charged the note to Mr. Buch's account, credited him with the amount of the draft, and forwarded the latter for collection. The cashier did not ask for any explanation of the difference in amount between the note and the draft, and no explanation was offered then, or is now offered. As testified by the cashier, he supposed the draft would be accepted, although it was in excess of the note, " simply because I had confidence in Mr. Buch and Mr. Siple."

4. In consequence of the facts stated in the last two paragraphs, the note was not protested, and no notice of non-payment was given to the indorser. On November 27th, the draft was presented to Mr. Siple, at Hummelstown, but he refused to pay it, and it was protested for non-payment.

5. On November 23d or 24th, Mr. Buch mailed a check to Mr. Siple, but the evidence does not show for what amount, or whether Mr. Siple received it, or what afterwards became of it.

6. After the return of the protested draft, the bank brought this suit upon the note.

CONCLUSIONS OF LAW.

The plaintiff's position is, that the defendant's telegram amounted to a waiver of protest upon the note, and therefore, that she remained liable upon the indorsement, although no notice of non-payment was given. Under the authorities cited at the trial: Uhler v. National Bank, 64 Pa. 406; Moyer's App., 87 Pa. 129; Annville N. Bank v. Kettering, 106 Pa. 531; Oxnard v. Varnum, 111 Pa. 193, we would sustain this position, if the draft had been for the amount of the note; but, [as the facts are, we think the waiver was not absolute, but conditional, and therefore, that the case turns upon another point, viz.: Was the condition fulfilled? Was the defendant bound to accept and pay the draft which was actually drawn? She agreed to accept a draft "for note due to-day," that is, a note for $805.25; whereas the draft was for a substantially larger amount, $840, unaccompanied by any satisfactory explanation of the variance.

In our opinion, this was a substantial difference from the condition contained in the telegrams, and therefore, she was not bound to accept this draft.] [1]

The bank did not inquire as to the precise terms of the contract to accept, and [it must be held to have taken the risk that the draft as actually drawn was such as the defendant had agreed to accept. The difference in amount was patent, and large enough to put the bank upon inquiry. It did not inquire, however, choosing rather to rely upon the confidence in the parties concerned, and thus taking the risk that the transaction was in all respects accurate, and in accordance with the telegraphic agreement.] [2]

Our conclusion is, that [as the draft drawn upon the defendant was not such as she had agreed to accept, she was discharged from liability upon the note, because of the failure to give her notice of non-payment, and therefore that the plaintiff cannot recover. Or, it may be stated thus: Her waiver of protest was upon condition, of which the bank had constructive notice, because it had the means of knowledge and was under a duty to inquire. As the condition was not fulfilled, her right to notice of non-payment remained, and as no such notice was given, her liability as indorser is gone.] [3]

—To the foregoing decision, the plaintiff, on January 9, 1891, filed exceptions alleging that the court erred: In the rulings of the decision embraced in [ ] [1] [2] [3]. In directing judgment to be entered for the defendant, and in not directing judgment to be entered for the plaintiff.[4]

On January 19, 1891, said exceptions were dismissed, and judgment entered in accordance with the decision filed. Thereupon, the plaintiff took this appeal, specifying for error:

1–4. The dismissal of the plaintiff's exceptions.[1 to 4]

*Mr. Robt. Snodgrass* ( with him *Mr. D. G. Eshleman*), for the appellant.

Counsel cited: Annville N. Bank v. Kettering, 106 Pa. 531; Levy v. Peters, 9 S. & R. 125; Moyer's App., 87 Pa. 129; Spencer v. Harvey, 17 Wend. 489; Boyd v. Toledo Bank, 32 Ohio St. 526 ( 30 Am. Rep. 624 ).

*Mr. H. M. Graydon* ( with him *Mr. B. F. Etter* ), for the appellee.

Counsel cited: Annville N. Bank v. Kettering, 106 Pa. 531; Uhler v. National Bank, 64 Pa. 406; Jaccard v. Anderson, 31 Mo. 91; Thornton v. Wynn, 12 Wheat. 183.

PER CURIAM:

We affirm this judgment upon the opinion of the learned judge of the court below.

---

## COMMONWEALTH v. PENNA. SALT MFG. CO.

APPEALS BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF DAUPHIN COUNTY.

Argued June 2, 1891—Decided June 12, 1891.

Where the return of a corporation of its corporate indebtedness, for taxation under § 4, act of June 30, 1885, P. L. 194, fails to show, and on appeal from the official settlement the company does not prove, what part thereof is held by non-residents, it is liable to taxation upon the whole amount: Commonwealth v. Canal Co., 123 Pa. 594; Commonwealth v. Chester City, 123 Pa. 626.*

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 13, 14 May Term 1891, Sup. Ct.; court below, Nos. 58 March Term 1888, 227 January Term 1889, C. P.

On January 19, 1888, to No. 58 March Term 1888, in the court below, from an account settled by the auditor general and state treasurer against the Pennsylvania Salt Manufacturing Company, for tax on scrip, bonds, and certificates of indebtedness, under § 4, act of June 30, 1885, P. L. 194, for the year ending the first Monday of November, 1887, the company filed an appeal and specifications of objections. Afterward, to No. 227 January Term 1889, from a like settlement made for said tax for the year ending the first Monday of November, 1888, an appeal and specifications of objections were filed, also.

---

* Cf. Commonwealth v. Railroad Co., post, 57.